UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANATOLIE STATI, *et al.*,

|                          |                  |
|--------------------------|------------------|
|                          | Petitioners,     |
| -v-                      |                  |
| REPUBLIC OF KAZAKHSTAN,  |                  |
|                          | Respondent.      |

19 Misc. 382 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

In 2013, a Swedish arbitral tribunal issued a $500 million award in favor of petitioners—

Anatolie Stati, his son, Gabriel Stati, and two corporate entities they own and control, Ascom

Group, S.A. and Terra Raf Trans Traiding Ltd.—against respondent Republic of Kazakhstan.

Since then, petitioners and Kazakhstan have participated in a worldwide game of cat and mouse,

in which petitioners have attempted to collect on the award and Kazakhstan has sought to stymie

their efforts.  Relevant here, in 2018, the U.S. District Court for the District of Columbia

confirmed the award and reduced it to a judgment, which petitioners duly registered in this

District.

The present dispute does not directly relate to the arbitral award or even the judgment.

Instead, before the Court are two motions related to petitioners' post-judgment efforts in this

District to collect on the award.  First, petitioners move to compel various Citibank entities to

respond to post-judgment subpoenas to disclose information about assets held by Kazakhstani

agencies, instrumentalities, and affiliated organizations.  Dkt. 27.  Second, Kazakhstan moves for

a protective order requiring petitioners to serve Kazakhstan with all subpoenas issued to non-

parties in this action. Dkt. 30. For the reasons that follow, the Court grants petitioners' motion

in part and denies it in part, and denies Kazakhstan's motion.

## I.    Background[1]

### A.    The Underlying Dispute and Arbitration Award

This case has its genesis in Kazakhstan's seizure of the Statis' oil and gas business for

alleged tax deficiencies in 2010. The Statis, dual citizens of Moldova and Romania, claimed that

Kazakhstan's actions violated its obligation under the Energy Charter Treaty to treat foreigners'

investments fairly and equitably. As contemplated by the treaty, the parties took their dispute to

arbitration before the Stockholm Chamber of Commerce.

In December 2013, the arbitral tribunal ruled for petitioners and awarded them

approximately $500 million in damages. Kazakhstan sought to annul the award in the Swedish

courts. It argued, among other things, that the award had been procured by fraud. But the

Swedish courts rejected Kazakhstan's challenges, leaving the award intact.

In 2014, the Statis filed a petition in the U.S. District Court for the District of Columbia

to confirm the arbitral award. Kazakhstan opposed confirmation, arguing again that the award

was tainted by fraud. The court rejected Kazakhstan's fraud defense, confirmed the award, and

entered judgment for petitioners. *Stati v. Republic of Kazakhstan*, 302 F. Supp. 3d 187 (D.D.C.

---

[1] Unless otherwise noted, the facts which form the basis of this decision are taken from the parties' pleadings and their submissions in support of and in opposition to the instant motion—specifically, petitioners' memorandum in support of their motion to compel, Dkt. 27 ("Pet'r Discovery Br."); Kazakhstan's memorandum in support of its motion for a protective order, Dkt. 28 ("Resp't PO Br."); the declarations of Matthew H. Kirtland, Dkt. 29 ("Kirtland Decl."), Dkt. 31 ("Kirtland Reply Decl."); Kazakhstan's opposition to petitioners' motion to compel, Dkt. 32 ("Resp't Discovery Br."); petitioners' opposition to Kazakhstan's motion for a protective order, Dkt. 33 ("Pet'r PO Br."); the Citibank entities' opposition to petitioners' motion to compel, Dkt. 34 ("Citi Br."); petitioners' reply in support of their motion to compel, Dkt. 37 ("Pet'r Compel Reply Br."); and Kazakhstan's reply in support of its motion for a protective order, Dkt. 38 ("Resp't PO Reply Br.").

2018). The D.C. Circuit affirmed by summary order, 773 F. App'x 627 (D.C. Cir. 2019), and the Supreme Court denied certiorari, 140 S. Ct. 381 (2019). In 2019, petitioners registered the judgment in this District. Dkt. 1; *see also* 28 U.S.C. § 1963 (providing for registration of judgments for enforcement in other districts).

**B.     Recent Developments Outside this District**

Following the district court's confirmation of the arbitral award in 2018, the legal battles between the Statis and Kazakhstan have continued on multiple fronts.

In the United States, Kazakhstan sought to recover against the Statis under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, in the U.S. District Court for the District of Columbia. In that suit, filed in 2017 but stayed for the duration of the Statis' petition to confirm the arbitral award, Kazakhstan alleged that the Statis had obtained the award through fraud and that the Statis' efforts to collect on the award had furthered that fraud. The district court granted the Statis' motion to dismiss, *Republic of Kazakhstan v. Stati*, 380 F. Supp. 3d 55 (D.D.C. 2019), and the D.C. Circuit affirmed, again by summary order, 801 F. App'x 780 (D.C. Cir. 2020). More recently, in 2023, Kazakhstan brought another action, also in U.S. District Court for the District of Columbia, to vacate the judgment confirming the award pursuant to Federal Rule of Civil Procedure 60(d). *Republic of Kazakhstan v. Stati*, No. 23 Civ. 565 (APM) (D.D.C.). Kazakhstan alleges that newly discovered evidence proves the Statis' fraud. The Statis' motion to dismiss, fully briefed late last year, remains pending.

Kazakhstan has also challenged the Statis' efforts to enforce the award in several foreign jurisdictions, with varying degrees of success. Courts in Sweden (the arbitral seat) and Italy have rejected Kazakhstan's allegations of fraud and upheld the award. But courts in Belgium, the Netherlands, Luxembourg, and the United Kingdom have refused to enforce the award (or suspended enforcement proceedings) based on concerns that the award may have been procured

3

by fraud. Litigation remains ongoing in Belgium, the Netherlands, and Luxembourg, while the Statis have agreed not to pursue further enforcement in the United Kingdom. The arbitral award remains wholly unsatisfied.

### C.    Recent Developments Within this District

This decision primarily arises from subpoenas issued after petitioners registered the judgment in this Court.

In late 2022 and early 2023, the Statis served several subpoenas on Citibank N.A., Citicorp LLC, Citigroup Inc., Citigroup Global Markets Inc., and Citigroup Investments, Inc. (together, "Citi"). Dkt. 27, Ex. 3. The subpoenas sought both documents and information regarding assets held by (1) the Republic of Kazakhstan, (2) dozens of other entities that the Statis claim are agencies, instrumentalities, or affiliates of Kazakhstan, and (3) the National Bank of Kazakhstan, Kazakhstan's National Fund, and state-owned companies in the oil, gas, uranium, and airline sectors. The subpoenas also include catch-all language demanding information from Citi about assets held by "any agency or instrumentality" of the Republic. As to each such entity, the subpoenas seek records from 2012 to the present.

In early 2023, Citi served formal objections to the subpoenas. Dkt. 27, Ex. 4. Among other arguments, Citi protested that it does not maintain accounts for the Republic of Kazakhstan (the only entity named in the judgment) and that the subpoenas improperly lump together numerous legally separate entities. Citi also objected that the subpoenas are unduly burdensome because they require Citi to determine which entities might qualify as agencies or instrumentalities of Kazakhstan—a task that would entail analyzing each entity's status under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330 *et seq.* Finally, Citi objected that the requested documents are not reasonably calculated to lead to executable assets, both

4

because they reach too far back in time and because many assets of the targeted entities are likely immune from execution under the FSIA.

In January 2024, after a failed effort to resolve the dispute through negotiations between counsel, petitioners served substantially identical subpoenas on three Citi entities, Dkt. 27, Ex. 5, to which Citi objected, Dkt. 27, Ex. 6. In February 2024, petitioners served substantially identical subpoenas on the remaining three Citi entities, Dkt. 27, Ex. 8, to which Citi again objected, Dkt. 27, Ex. 9.

### D.    Procedural History

On February 13, 2024, petitioners moved to compel Citi to comply with the subpoenas. Dkt. 13. On February 16, 2024, Kazakhstan moved for a Local Rule 37.2 pre-motion conference to address, among other things, its substantive objections to petitioners' motion, and its request for a protective order. Dkt. 16. On February 23, 2024, the Court held a conference with the parties and Citi, Dkt. 25 (transcript), and set a briefing schedule for petitioners' motion to compel and Kazakhstan's motion for a protective order, Dkt. 24.

On March 11, 2024, petitioners filed a memorandum of law in support of their motion to compel, Dkt. 27 ("Pet'r Discovery Br."), and Kazakhstan filed a memorandum of law in support of its motion for a protective order, Dkt. 28 ("Resp't PO Br."). On March 25, 2024, petitioners opposed Kazakhstan's motion for a protective order, Dkt. 33 ("Pet'r PO Br."), and Kazakhstan opposed petitioners' motion to compel, Dkt. 32 ("Resp't Discovery Br."). On April 8, 2024, Citi opposed petitioners' motion to compel. Dkt. 34 ("Citi Br."). On April 15, 2024, petitioners filed a reply brief in support of their motion to compel, Dkt. 37 ("Pet'r Discovery Reply Br."), and Kazakhstan filed a reply brief in support of its motion for a protective order, Dkt. 38 ("Resp't PO Reply Br.").

## II.    Discussion

### A.    Petitioners' Motion to Compel

Petitioners move to compel Citibank to respond to its post-judgment subpoenas.  The Court grants the motion in part and denies it in part.

#### 1.    Kazakhstan's Standing

Before addressing the merits of petitioners' motion to compel, the Court must resolve the threshold issue of whether Kazakhstan has standing to object to the subpoenas issued to Citi.

Petitioners argue that Kazakhstan lacks standing because it is not the subpoena recipient and has not articulated a specific privacy or proprietary interest in the requested information. Pet'r Discovery Br. at 6.  Kazakhstan contends it has standing based on its proprietary interest in the information sought and the international comity concerns implicated by the subpoenas. Resp't Discovery Br. at 3–5.

The Court concludes that Kazakhstan has standing to raise certain objections to the subpoenas, but the scope of its standing is limited.  "A party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden." *Medequa LLC v. O'Neill & Partners LLC*, No. 21 Civ. 6135 (AKH), 2024 WL 1216521, at *1 (S.D.N.Y. Mar. 21, 2024) (quoting *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11 Civ. 1590, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013)); *see also Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975).  However, a party may object based on a personal right or privilege with respect to the documents sought.  *See Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (party may object "to protect a personal privilege or right").

Here, Kazakhstan has a sufficient interest in the subpoenaed information to confer standing, at least in part.  By definition, the subpoenas seek information about Kazakhstan's property and financial affairs, as they are aimed at enforcing a judgment against Kazakhstan.

"'[I]t is well-established' that an individual or entity with a 'real interest' in documents sought by a subpoena"—such as "banking records"—"has standing to raise objections to their production." *Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 202 (S.D.N.Y. 2023) (citation omitted). As such, courts in this District have often recognized that a sovereign may object to subpoenas directed at discovery of its assets and financial transactions. *See, e.g., Aurelius Cap. Partners v. Republic of Argentina*, No. 07 Civ. 2715 (TPC), 2013 WL 857730, at *2 (S.D.N.Y. Mar. 7, 2013); *Wultz v. Bank of China Ltd.*, 32 F. Supp. 3d 486, 493–94 (S.D.N.Y. 2014); *In re Subpoenas Served on Lloyds Banking Grp. PLC* ("*In re Lloyds*"), No. 21 Misc. 376 (JGK), 2021 WL 5708721, at *2 (S.D.N.Y. Nov. 26, 2021). The subpoenas here raise issues of sovereign immunity and foreign relations that Kazakhstan has a legitimate interest in addressing.

However, Kazakhstan's standing is limited. It does not have standing to object on grounds of undue burden to Citi or to raise other objections particular to the subpoena recipient. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 210 (2d Cir. 2012) (subpoenas to third-party banks impose "no burden and no expense" on a sovereign). Nor does Kazakhstan have standing to object to requests for information about entities that it represents have no relationship with the Republic. *See In re Lloyds*, 2021 WL 5708721, at *2 (a foreign sovereign may not object to requests directed at "irrelevant entities" because such an argument "effectively concede[s] that those requests [do] not involve [the foreign sovereign's] interests or confidential information"). In sum, Kazakhstan has standing to object to the subpoenas on grounds relating to privacy and the invasion of its sovereign interests, including under the FSIA. It does not have standing to object based on relevancy or the burden to Citi in complying with the subpoenas. The Court will consider Kazakhstan's objections within these parameters.

### 2.    Scope of the Subpoenas

Under Rule 69, a judgment creditor "may obtain discovery from any person" in aid of judgment or execution "as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2).  Discovery under Rule 69 "is constrained principally in that it must be calculated to assist in collecting on a judgment." *EM Ltd.*, 695 F.3d at 207 (citing Fed. R. Civ. P. 69(a)(2) and Fed. R. Civ. P. 26(b)(1)), *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014).  "New York state's post-judgment discovery procedures, made applicable to proceedings in aid of execution by Federal Rule 69(a)(1), have a similarly broad sweep," providing that a "judgment creditor may compel disclosure of all matter relevant to the satisfaction of the judgment." *Id.* (quoting N.Y. C.P.L.R. § 5223).

Citi, joined by Kazakhstan, raises three objections to petitioners' motion to compel.  The Court considers each in turn.

#### a.    The FSIA's limitations on executable assets

Citi and Kazakhstan object that petitioners' discovery requests seek information about assets that may be immune from execution under the FSIA.  They argue that discovery should be limited to assets that are demonstrably not immune (for instance, assets used for commercial activity in the United States).  Citi Br. at 4–5; Resp't Discovery Br. at 6–10.

That argument misapprehends the law governing post-judgment discovery against foreign sovereigns.  In *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014), the Supreme Court held that the FSIA does not categorically limit post-judgment discovery to potentially executable assets.  The Court thus rejected Argentina's contention that the FSIA's execution immunity provisions implicitly created a broader discovery immunity.  It held instead that the standard "rules governing discovery in post-judgment execution proceedings" apply with full force. *Id.* at 138, 144–45.  Consistent with this ruling, the Second Circuit has held that

"judgment creditors need not satisfy the 'stringent requirements for attachment' under the FSIA 'to simply receive information about [a sovereign state's] assets.'" *Exp.-Imp. Bank of the Republic of China v. Grenada*, 768 F.3d 75, 92 (2d Cir. 2014) (citation omitted); *see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1478 (9th Cir. 1992).

That rule recognizes the crucial distinction between discovery and execution. Although a foreign state's property is generally immune from attachment and execution under the FSIA, the FSIA does not create a coextensive discovery privilege. *See NML Capital*, 573 U.S. at 144–45. The standard for permissible post-judgment discovery is not whether the asset at issue is assuredly capable of being executed against, but whether the information sought is "reasonably calculated" to lead to the discovery of executable assets. *EM Ltd.*, 695 F.3d at 205; *see also id.* at 207. As the Supreme Court has recognized, information about potentially immune assets may well lead to the identification of non-immune assets or help to establish that an asset falls within an exception to immunity. *See NML Capital*, 573 U.S. at 144 ("Argentina maintains that, if a judgment creditor could not ultimately execute a judgment against certain property, then it has no business pursuing discovery of information pertaining to that property. But the reason for these subpoenas is that NML *does not yet know* what property Argentina has and where it is, let alone whether it is executable under the relevant jurisdiction's law." (emphasis in original)). Whether a particular asset is immune from execution often involves fact-intensive determinations that cannot be reliably resolved without the information sought in discovery. *Cf. OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35-37 (2015) (examining whether a state entity's "particular conduct" in the United States falls within the FSIA's commercial-activity exception). Accepting Citi and Kazakhstan's position would create an untenable catch-22,

9

requiring petitioners to prove assets are not immune before obtaining the information necessary

to make that determination.

 To be sure, petitioners may not stray so far afield as to seek clearly irrelevant discovery

or make frivolous demands. But "relevance for the purposes of discovery is 'an extremely broad

concept.'" *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 366 (S.D.N.Y. 2010) (citation

omitted). As such, although "information that could not possibly lead to executable assets is

simply not 'relevant' to execution in the first place," *NML Capital*, 573 U.S. at 144, the fact that

some of Kazakhstan's assets may enjoy heightened immunity from *execution*—like those held in

the name of its national bank, Resp't Br. at 11–18—does not make *discovery* into those assets

necessarily irrelevant. *Cf. Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16,

18 (2d Cir. 2014) (summary order) ("entities" that are "not liable for" a sovereign's debts "may

possess information about [its] assets, even if it does not own or hold those assets itself"). As

other district courts have explained in resolving disputes among these very parties, discovery into

such areas may allow petitioners "to 'identify where [Kazakhstan] may be holding property that

*is* subject to execution'"—for instance by tracing how assets have been transferred or by

identifying the beneficial owners of particular assets. *State St. Corp. v. Stati*, No. 19 Civ. 91107

(LTS), 2020 WL 8839775, at *9–10 (D. Mass. Nov. 16, 2020) (emphasis in original) (quoting

*Stati v. Republic of Kazakhstan*, No. 14 Civ. 1638 (ABJ), 2020 WL 13144317, at *4 (D.D.C.

May 18, 2020)).

 Here, neither objector seriously contests that Kazakhstan is intertwined with the entities

listed in the subpoenas. All are state agencies, state holding companies, or instrumentalities

wholly or partially owned by the state. *See* Pet'r Compel Reply Br. at 8–9 & nn. 5–17.[2]  If

Kazakhstan "ultimately believes some of the discovered assets [will be] immune from

attachment, it will have the opportunity to make that argument at the execution stage." *Amduso*

*v. Republic of Sudan*, 288 F. Supp. 3d 90, 97–98 (D.D.C. 2017).

In sum, petitioners have more than met their burden to demonstrate that the listed

entities' financial records may lead to the discovery of executable assets. *EM Ltd.*, 695 F.3d at

207.  Neither the FSIA nor New York law requires more.  The Court thus rejects this objection.

b.      *Undue burden*

Citi next argues that petitioners' subpoenas are unduly burdensome.  It argues that there

is vague language in some of petitioners' requests and objects to petitioners' request for 12 years

of records.  Citi Br. at 4–8.  On this point, the Court, largely agreeing with Citi, narrows the

subpoenas accordingly.

As Citi argues, several requests are imprecise, essentially leaving Citi to guess what

qualifies as responsive.  First, Citi cannot be expected to identify Kazakhstan's "subdivisions,

---

[2] Following the parties' lead, the Court uses the definition of "Judgment Debtor" set forth in its initial document subpoenas, Dkt. 27, Ex. 3 at 5–7.  It includes the following entities, grouped here by role.  First, as to state entities, the definition includes the Republic of Kazakhstan, the National Bank of Kazakhstan (and the National Investment Corporation within it), Kazakhstan's Ministry of Foreign Affairs, Kazakstan's Ministry of Finance (and two entities within it—the Treasury Committee and the Deposit Insurance Fund), and Kazakhstan's National Fund.  Second, as to state holding companies, Baiterek National Managing Holding Joint-Stock Company, Kazyna Capital Management Joint-Stock Company, Eurasian Resources Group, KazakhExport Export Insurance Company, the Development Bank of Kazakhstan, and the Investment Fund of Kazakhstan JSC.  And third, as to instrumentalities wholly or partially owned by the state, NAC Kazatomprom JSC (a uranium company), Air Astana JSC (Kazakhstan's flag carrier), QazTech Ventures JSC (a venture capital company), Samruk-Kazyna Ondeu LLP (a chemical company), Shahar Media Group (a media and entertainment company), JSC National Company Kazakhstan Engineering (a specialized defense company), Kazakhstan Electricity Grid Operating Company JSC (an electricity provider), Qazaqstan Radio and Television Corporation (a television channel), Kazpost JSC (Kazakhstan's national postal service).

agencies, or instrumentalities," Dkt. 27, Ex. 5 at 6, as required by the information subpoenas, or

to identify "any political subdivision or any agency or instrumentality" of the named entities "as

defined in the Foreign Sovereign Immunities Act," as required by the document subpoenas, Dkt.

27, Ex. 3 at 5–7.  The Court holds that Citi need only respond as to the specific entities listed by

petitioners.  Second, Citi similarly cannot be expected to know or identify every "beneficiary" or

"beneficial interest holder" of accounts "related to" the National Fund without more guidance,

*e.g.*, Dkt. 27, Ex. 5 at 4, or to determine whether an account "explicitly relates to or references"

the National Fund, *e.g.*, *id.*  As Citi notes, these terms are vague and essentially call for a legal

conclusion—whether an entity has a cognizable right or interest in certain assets.  Citi Br. at 6.

The Court holds that Citi need not respond to Requests No. 4, 5, or 9 as currently worded, or

provide information as to accounts "purported to hold assets relating to" the listed entities.

Third, the time period proposed by petitioners—dating back to 2012—is not justified.  Tellingly,

petitioners, retreating in reply, represent that they intended to subpoena only records from 2016

onward.  Pet'r Reply Br. at 12 n.19.  That time period is consistent with the discovery upheld in

the District of Columbia and the District of Massachusetts.  *See State St. Corp.*, 2020 WL

8839775, at *21 & n.53.  The Court holds that Citi need only produce records from 2016

onward.

Subject to these qualifications, the Court finds appropriate, as a means to minimize the

burden on Citi, petitioners' proposal of a sequential procedure for discovery.  Pl. Discovery Br.

at 22–23.  For the entities listed by petitioners, Citi must identify the account number, the date

such account was opened, the holder of such account, the beneficial owner of such account (if

listed in Citi's records), the current balance of such account, the assets held in such account, the

name and title of any individual with access to such account, and whether the identity of any of

those individuals has changed since 2012.  Citi must produce this information within 30 days.
Petitioners may then seek full transaction records for specified accounts.  Based on Citi's
response, the Court expects petitioners to further narrow its subpoenas, and that both Citi and
petitioners will negotiate in good faith to limit further disputes.

        *c.*      *Geographic scope*

      Citi finally argues that it is unreasonable for petitioners to seek information concerning
assets located outside the United States, citing other countries' bank secrecy laws.  It contends
that discovery ought to be limited to domestic assets.  Citi Br. at 8–9.

      Citi's argument is not persuasive.  The Supreme Court in *NML Capital* rejected the
argument that the FSIA categorically bars discovery into a foreign sovereign's assets abroad.
573 U.S. at 144.  And the Second Circuit has consistently upheld broad post-judgment discovery
into foreign sovereigns' extraterritorial assets.  *See EM Ltd.*, 695 F.3d at 208 ("[I]t [is not]
unusual for [a] judgment creditor to seek disclosure related to assets held outside the jurisdiction
of the court where the discovery request is made.").  To limit discovery to domestic assets, as
Citi suggests, would incent foreign sovereigns to move their assets abroad to evade judgment
enforcement.  That foreign jurisdictions have "strict" bank secrecy laws is also of no moment.
"[T]he Second Circuit has clearly said that bank secrecy laws are not a bar to discovery orders."
*Nike, Inc. v. Wu*, 349 F. Supp. 3d 346, 368 (S.D.N.Y. 2018).  "Simply listing existing bank
secrecy and privacy laws and stating that they could create a conflict," as Citi has here, "is not
enough to trigger a comity conflict analysis—there must be a showing of actual, rather than
speculative, conflict between U.S. and foreign law."  *In re Subpoenas Served on Lloyds Banking
Grp. PLC*, No. 21 Misc. 376 (JGK) (SN), 2021 WL 3037388, at *7 (S.D.N.Y. July 19, 2021).
To the extent that the subpoenas genuinely create a specific conflict with the laws of a particular
jurisdiction, Citi must first raise that issue with petitioners.  If a good-faith dispute remains and is

unresolved, Citi may then seek relief from this Court. *See id.* (requiring non-party to "lay[] out the specific law at issue" and "apply[] the law to the present facts" to "show the conflict needed to trigger a comity analysis"). The Court thus rejects this objection by Citi.

### B.    Kazakhstan's Motion for a Protective Order

Kazakhstan moves for a protective order that would (1) require petitioners to serve Kazakhstan with all post-judgment subpoenas they issue to non-parties in this action and (2) quash any previously issued subpoenas that were not served on Kazakhstan. The Court denies the motion.

Neither the Federal Rules of Civil Procedure nor New York law require a judgment creditor to provide notice to the judgment debtor when issuing post-judgment discovery subpoenas to non-parties. Rule 69(a)(2) allows a judgment creditor to obtain discovery "as provided in these rules or by the procedure of the state where the court is located." New York's CPLR 5223 and 5224, in turn, authorize broad post-judgment discovery from "any person" but do not contain any notice provision. As one New York court has noted, "given the notice provisions otherwise set forth in Article 52 [of the CPLR], the Legislature's failure to include a notice requirement in CPLR 5223 and 5224 indicates that the omission was intentional." *Encalada v. CPSI Realty LP*, No. 104782/2007, 2014 WL 2623602 (N.Y. Sup. Ct. June 10, 2014) (citation omitted). That judgment has a basis in sound policy. Tipping off a judgment debtor that discovery of its assets is imminent may give it an opportunity to move or conceal those assets. *Cf. GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, No. 07 Civ. 3219 (PKC) (DF), 2012 WL 1933558, at *6 (S.D.N.Y. May 22, 2012) (one purpose of post-judgment third-party discovery under New York law is "to determine if the judgment debtor has improperly

14

transferred or concealed assets that could satisfy the judgment"). As such, the normal rule is that no notice is required.[3]

Kazakhstan does not offer a good reason to depart from that rule here. It first contends that lack of notice would "pose a grave risk of offending foundational sovereign immunity principles," protected by the FSIA, Resp't PO Br. at 14–15, but that claim is overblown. Foreign sovereigns do not enjoy special protections or immunities from post-judgment discovery. *See NML Capital*, 573 U.S. at 142 ("There is no . . . provision [of the FSIA] forbidding or limiting discovery in aid of execution of a foreign sovereign judgment debtor's assets."). The FSIA itself adequately safeguards Kazakhstan's interests. For example, it prohibits attachment or execution on sovereign property without a court order and an opportunity for Kazakhstan to object. 28 U.S.C. §§ 1609–10. That Congress required notice in advance of *attachment* or *execution* of a sovereign's assets but not *discovery* of those assets is indicative of a deliberate policy choice. "It is not [the courts'] role to rewrite the FSIA based on purported policy concerns that Congress and the President have not seen fit to recognize." *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 280 (2023); *cf. NML Capital*, 573 U.S. at 141–42 ("[A]ny sort of immunity

---

[3] The same is true for post-judgment subpoenas issued under Rule 45. *Contra* Resp't PO Br. at 13. Under Rule 45(a)(4), if a subpoena commands the production of documents or tangible things "*before trial*, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4) (emphasis added). By its plain terms, the rule's notice requirement is limited to pre-trial subpoenas. The natural implication is that subpoenas issued after trial—*i.e.*, post-judgment subpoenas—are exempt from the notice requirement. The vast majority of courts to address this issue have so held. *See, e.g., Consumer Fin. Prot. Bureau v. Integrity Advance, LLC*, No. 21 Misc. 206 (DDC) (TJJ), 2022 WL 2791173, at *6 (D. Kan. July 15, 2022); *PNC Equip. Fin., LLC v. Mariani*, No. 19 Civ. 76 (MAS), 2021 WL 4078864, at *2 (D.N.J. Sept. 8, 2021); *Signature Fin., LLC v. McClung*, No. 19 Misc. 18 (PKH), 2019 WL 2130157, at *2 (W.D. Ark. May 15, 2019). *But see Cessna Fin. Corp. v. Al Gaith Holding Co. PJSC*, 15 Civ. 9857 (PGG) (KNF), 2021 WL 949714, at *6 (S.D.N.Y. Mar. 12, 2021) (quashing post-judgment subpoenas issued under Rule 45 for lack of notice without examining the rule's language or citing opposing authority).

defense made by a foreign sovereign in an American court must stand on the Act's text. Or it must fall."). The FSIA does not afford Kazakhstan a right to pre-discovery notice.

Kazakhstan next invokes principles of "comity," Resp't PO Br. at 15–16, but these do not compel a result in its favor. Courts fashioning discovery orders should certainly be sensitive to a foreign state's sovereign status and interests, *see Exp.-Imp. Bank of the Republic of China*, 768 F.3d at 93 n.23, but such sensitivity is a far cry from requiring advance notice of all third-party subpoenas. Doing so as a blanket rule would allow a debtor to "conceal its assets from the district court and therefore avoid execution of . . . judgment[s]" against it, *Richmark*, 959 F.2d at 1478, just the result that the "permissive" regime of post-judgment discovery seeks to avoid, *NML Capital*, 573 U.S. at 138. *Cf. Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997) ("Although courts in this country have long recognized the principles of international comity and have advocated them in order to promote cooperation and reciprocity with foreign lands, comity remains a rule of 'practice, convenience, and expediency' rather than of law. And courts will not extend comity . . . when doing so would be contrary to the policies or prejudicial to the interests of the United States." (citation omitted)). Kazakhstan has not shown that the subpoenas at issue conflict with any foreign laws or otherwise articulated specific harms to its sovereign dignity. Its generalized claim that lack of notice offends comity does not justify judicial intervention.

Kazakhstan next argues that the "circumstances of this case," Resp't PO Br. at 17–18, warrant advance notice here, but that claim too is unpersuasive. To be sure, petitioners earlier pursued certain enforcement relief (*e.g.*, attaching diplomatic property) but abandoned that request when challenged by Kazakhstan. Pet'r PO Br. at 15–17 (acknowledging as much). But that outcome reflected the proper functioning of the post-judgment execution process. As noted,

in general, the American property of a foreign state may be attached only by court order.  28

U.S.C. § 1610(c) ("No attachment or execution . . . shall be permitted until the court has ordered

such attachment and execution . . . .").  That petitioners reconsidered their course after receiving

Kazakhstan's objections to that effect does not demonstrate "bad faith" or a systematic abuse of

process on their part.  Nor does the pendency of Kazakhstan's Rule 60(d) action in the U.S.

District Court for the District of Columbia to vacate the underlying judgment justify the

extraordinary relief sought here.  Kazakhstan has not sought a stay of enforcement pending

resolution of that motion.  And Rule 62(b) contemplates the proper procedure for obtaining a

stay—a motion in the issuing court and, ordinarily, a supersedeas bond.  *See In re Nassau*

*County Strip Search Cases*, 783 F.3d 414, 417–18 (2d Cir. 2015) (per curiam).  That Kazakhstan

is challenging the underlying judgment does not mean that it is likely to succeed in that

endeavor.  The existence of that challenge is not a basis for the Court to hamper petitioners'

legitimate judgment-enforcement efforts.

## CONCLUSION

For the foregoing reasons, the Court grants petitioners' motion to compel in part and

denies it in part, and denies Kazakhstan's motion for a protective order.  The Clerk of Court is

respectfully directed to terminate all pending motions.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 17, 2024
      New York, New York